*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**Anthony M. BODOH, Private**
United States Army, Appellant

**No. 18-0201**

Crim. App. No. 20150218

Argued November 7, 2018—Decided January 23, 2019

Military Judge: Wade N. Faulkner

For Appellant: *Captain Heather M. Martin* (argued); *Lieutenant Colonel Christopher D. Carrier*, *Major Todd W. Simpson*, and *Captain Zachary A. Szilagyi* (on brief); *Major Julie L. Borchers* and *Captain Joshua B. Fix.*

For Appellee: *Captain Brian Jones* (argued); *Colonel Steven Haight*, *Lieutenant Colonel Eric K. Stafford*, and *Major Virginia Tinsley* (on brief); *Captain Cassandra M. Resposo* and *Captain Jeremy S. Watford.*

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, SPARKS, and MAGGS, joined.

———————————

Judge OHLSON delivered the opinion of the Court.

A panel of officer members sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of assault and one specification of sexual assault in violation of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928 (2012). The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for five years, forfeiture of $1,546.80 pay per month for sixty months, and a reduction to the lowest enlisted grade. The United States Army Court of Criminal Appeals affirmed the findings and sentence.

We granted review on the following issue:

> Whether the military judge plainly erred by allowing the trial counsel to misstate the law and argue

> that the panel should base its verdict on [the Army's Sexual Harassment/Assault Response and Prevention (SHARP)] training.

*United States v. Bodoh*, 78 M.J. 50 (C.A.A.F. 2018) (order granting review).[1]

We hold that trial counsel's conduct was not plainly erroneous because: (1) it was not improper for trial counsel to question the panel members about SHARP training during voir dire in order to discern whether the panel members could be impartial; (2) trial counsel's misstatement of the law while cross-examining Appellant was promptly cured by the military judge; and (3) trial counsel's arguments did not constitute clear or obvious error and did not materially prejudice Appellant's substantial rights. Accordingly, we affirm the judgment of the lower court.

## I. Facts

In June 2014, Appellant stayed at the on-base home of VH and her husband. Over the course of one afternoon and evening, they ingested alcohol and "Triple Cs" (a cough and flu medication). Later in the evening, VH and her husband fell asleep in their bedroom.

After the couple had fallen asleep, Appellant entered the bedroom and took VH to the bathroom. While VH's husband slept in the bedroom, Appellant and VH engaged in oral and vaginal sex in various rooms of the house. VH testified that she did not consent to the sexual activity, repeatedly asked to return to bed, and started crying during the incident. Eventually, Appellant ended the encounter and told VH to go to bed. Appellant later asserted that VH had consented to the sexual acts.

The Government charged Appellant with one specification of sexual assault by causing bodily harm and two speci-

---

[1] This assigned issue was granted with the exact wording requested by Appellant and we decline to consider other alleged instances of prosecutorial misconduct that are raised in Appellant's brief but are outside the scope of the granted issue. *United States v. Guardado*, 77 M.J. 90, 95 n.1 (C.A.A.F. 2017) (declining to address argument falling outside scope of granted issue).

fications of assault consummated by a battery.[2] After Appellant entered pleas of not guilty, his case proceeded to trial and he was convicted of some of the charged offenses. Appellant now challenges on appeal trial counsel's conduct during member voir dire, cross-examination of Appellant, and findings and rebuttal arguments.

## A. Voir Dire

During member voir dire, the military judge instructed the members, "You are required to follow my instructions on the law and may not consult any other source as to the law pertaining to this case unless it is admitted into evidence." Also during voir dire, trial counsel posed the following four questions to the members about the Army's SHARP program:

- "[D]oes anyone disagree that the SHARP program may make it easier for Soldiers to report than civilians?" (The members provided a "negative response.")

- "Given the training that Soldiers go through, does anyone think that a Soldier should get verbal consent for having sexual intercourse with somebody? Given the SHARP program and the training to go through, does anyone think you should have verbal consent before having sexual intercourse …?" (Four members (three of whom remained on the panel) answered in the affirmative and the remaining members answered in the negative. Neither trial counsel, defense counsel, nor the military judge further investigated this response.)

- "Does anyone here believe that just because [of] the SHARP program … or the political environment, that they would have to find the accused guilty in a sexual assault case based upon the

---

[2] Appellant was also charged with violating a lawful order, in violation of Article 92, UCMJ, 10 U.S.C. § 892 (2012). The military judge granted the defense's Rule for Courts-Martial (R.C.M.) 917 motion for a finding of not guilty for this Article 92, UCMJ, offense.

SHARP Program?" (The members provided a negative response.)

- "Does anyone here believe that just because [of] the SHARP program or political environment that they could not listen to the evidence fairly?" (The members provided a negative response.)

After these inquiries, trial counsel asked, "And, do you all understand that you have to follow the laws the judge instructs, apply the facts presented in court, and your common sense and life experience in making decisions …?" The members unanimously agreed that they would follow the law as instructed by the military judge.

## B. Appellant's Cross-Examination

The prosecution did not raise SHARP training in its case-in-chief. Instead, when Appellant testified in his defense, he stated on direct examination that the victim "pulled the SHARP defense." Trial counsel later established on cross-examination that Appellant had "gone through SHARP training." Trial counsel then asked:

> Q. And you know about not having sex with people when they've had drugs and alcohol, correct?
>
> A. To the best of my knowledge, she wasn't —
>
> Q. You know about not having sex with people that are on drugs and alcohol, correct? You are not supposed to do that.
>
> A. Yes, sir.
>
> ....
>
> Q. You are not supposed to sleep with someone when they are on Triple C's, correct?
>
> A. Yes, sir.

This drew an objection from trial defense counsel for badgering and asking questions based on evidence not in the record. However, trial defense counsel did not raise an objection that trial counsel was misstating the law. The military judge overruled the badgering objection but then told trial counsel in open court:

> [Y]our questions are a misstatement of the law. There's nothing that says you can't have sex with

> somebody who has taken alcohol or Triple C. So if you want to phrase your questions to make them a correct statement of the law, I will allow them; otherwise, the objection is sustained.

Also, the military judge sustained a second defense objection when trial counsel began asking Appellant if he believed it was appropriate to have sex with someone who has used alcohol or drugs.

### C. Findings and Rebuttal Arguments

#### 1. Findings Argument

In a findings argument that covers thirty-three pages in the record of trial, trial counsel referenced SHARP training on three occasions. Trial defense counsel did not object to any of these references. The first reference to the SHARP program was as follows:

> She uses drugs. That does not give permission, based on your common sense and life experiences. *What do you keep learning when you're going through the SHARP programs?* People who are on drugs and alcohol are more vulnerable to be assaulted. People who use drugs and get involved in that kind of stuff are more vulnerable to get assaulted because their assailant knows no one is going to believe them.

(Emphasis added.)

The second reference to SHARP training arose after trial counsel argued that VH's intoxication did not give "permission [for her] to be sexually assaulted." Trial counsel argued: "She's vulnerable, as you all know again *from your SHARP training*, your common sense, and your life experience. It … makes victims more vulnerable when they're doing that because it's harder for them to report. It's harder for them to be believed because their memories are bad." (Emphasis added.)

Trial counsel's third reference to the SHARP program arose when he argued that although "[e]veryone would wish" that VH had fought back or screamed, these were myths about how a sexual assault victim will invariably react and "all your Soldiers learn in the SHARP program every day about those myths."

## 2. Rebuttal Argument

Trial counsel's rebuttal argument spans eleven pages and contains two arguments relevant to this appeal. First, trial counsel asserted that VH's counterintuitive behavior did not rule out a sexual assault because:

> The fact that she coped differently than what everyone else expected is why we have counterintuitive behavior; that's why we have implemented *the SHARP program*, because those things happen. We're taught that counterintuitive behavior, as leaders, is normal to experience and they can't expect them to cope the same and that's what you will do; you'll see from her.

(Emphasis added.) Second, trial counsel concluded his rebuttal argument with this series of remarks: "You have the evidence. You have the common sense. *You have the training.* Find him guilty of all charges and specifications." (Emphasis added.) Trial defense counsel did not object to these arguments.

## D. Military Judge's Instructions

Prior to findings argument, the military judge informed the members: "My duty is to instruct you on the law. Your duty is to determine the facts, apply the law to the facts, and determine the guilt or innocence of the accused." He also instructed that "[a]n accused may be convicted based *only on evidence before the court.*" (Emphasis added.) The military judge further explained "that only matters properly before the court as a whole should be considered. In weighing and evaluating the evidence, you are expected to use your own common sense and your knowledge of human nature …." Finally, the military judge instructed:

> Bear in mind that arguments of counsel are not evidence. Argument is made by counsel in order to assist you in understanding and evaluating the evidence, but you must base the determination of the issues in the case on the evidence as you remember it and apply the law as I instruct you.

At the conclusion of the parties' findings arguments, the military judge reminded the members that "argument by counsel is not evidence. Counsel are not witnesses."

## E. Members' Findings

The members returned a mixed verdict. They acquitted Appellant of an Article 128, UCMJ, assault specification in which the Government alleged that he had pulled VH's arm. They convicted Appellant of one specification of sexual assault and one specification of assault, in violation of Articles 120 and 128, UCMJ. However, in reaching these findings, the members excepted the word "anus" from the Article 120, UCMJ, sexual assault specification,[3] and they excepted "open hand" and substituted "penis" in the Article 128, UCMJ, assault specification.[4]

## II. Standard of Review

Because Appellant did not object to trial counsel's misstatements of law or references to the SHARP program at trial, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018). To prevail, Appellant bears the burden of establishing (1) error, (2) that is clear or obvious, and (3) results in material prejudice to a substantial right of the accused. *Id.* at 401. "[A]ll three prongs must be satisfied." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation omitted) (internal quotation marks omitted). "The third prong is satisfied if the appellant shows a reasonable probability that, but for the error [claimed], the outcome of the proceeding would have been different." *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted).

## III. Applicable Law

We recently explained in *Andrews* that "[t]rial prosecutorial misconduct is behavior by the prosecuting attorney that oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the

---

[3] The Article 120, UCMJ, sexual assault specification alleged that Appellant "penetrated the vulva, anus, and mouth of [VH] with his penis by causing bodily harm, to wit: penetrating the vulva, anus and mouth of [VH] with his penis, without the consent of [VH]."

[4] The Article 128, UCMJ, assault specification alleged that Appellant did "unlawfully slap [VH] with his open hand on her face."

prosecution of a criminal offense." 77 M.J. at 402 (citation omitted) (internal quotation marks omitted). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard[, and] …. [p]rosecutors have a duty to refrain from improper methods calculated to produce a wrongful conviction." *Id.* (citations omitted) (internal quotation marks omitted).

In terms of prejudice, "[w]hile prosecutorial misconduct does not automatically require a new trial or the dismissal of the charges against the accused, relief will be granted if the trial counsel's misconduct actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *Id.* (citation omitted) (internal quotation marks omitted). In evaluating prejudice, "we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial." *Id.* (internal quotation marks omitted) (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)); *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) ("[T]he reviewing court still considers the trial record as a whole to determine whether [the prosecutorial misconduct] was harmless under all the facts of a particular case."). We consider: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Fletcher*, 62 M.J. at 184.

## IV. Discussion

Appellant raises allegations of prosecutorial misconduct at three stages of his trial—during voir dire, witness examination, and findings argument. However, for the reasons provided below, Appellant has failed to establish that trial counsel's conduct constitutes plain error.

### A. Voir Dire

We have recognized that "[*v*]*oir dire* is a valuable tool … to determine whether potential court members will be impartial." *United States v. Jefferson*, 44 M.J. 312, 318 (C.A.A.F. 1996) (citation omitted). Thus, "voir dire should be used to obtain information for the intelligent exercise of challenges." R.C.M. 912(d) Discussion; *see also United States v. Bragg*, 66 M.J. 325, 327 (C.A.A.F. 2008). It is, however, subject to limitations. *See United States v. Smith*, 27 M.J.

25, 28 (C.M.A. 1988) (stating that voir dire does " 'not permit the examination to range through fields as wide as the imagination of counsel' " (quoting *United States v. Parker*, 6 C.M.A. 274, 280, 19 C.M.R. 400, 406 (1955))).

Here, there is no error, let alone clear or obvious error, in trial counsel's questions about the SHARP program during voir dire. First, although it is unclear why trial counsel inquired into whether the members believed that the SHARP program made it easier for soldiers to report sexual assaults than civilians, this question is facially benign and therefore not erroneous. Second, the remaining three questions posed about the SHARP program were designed to assess whether the members' SHARP training would improperly influence their deliberations. This is an appropriate line of inquiry for voir dire. *Jefferson*, 44 M.J. at 318. Therefore, trial counsel's references to SHARP during voir dire do not constitute prosecutorial misconduct.

## B. Questioning Witnesses

When examining witnesses, trial counsel cannot seek to introduce, either overtly or surreptitiously, inadmissible evidence and cannot misstate legal principles. *See United States v. Diaz*, 59 M.J. 79, 95 (C.A.A.F. 2003); *see also Berger v. United States*, 295 U.S. 78, 88 (1935) (explaining that a prosecutor has a "duty to refrain from improper methods calculated to produce a wrongful conviction").

Here, trial counsel erred when questioning Appellant. During this cross-examination, trial counsel first established that Appellant had participated in SHARP training and then asked a series of clearly impermissible questions founded on the false premise that a person who is intoxicated is inherently incapable of consenting to sexual acts. *See United States v. Rogers*, 75 M.J. 270, 274 (C.A.A.F. 2016) (explaining that a member held an erroneous understanding of the law because she believed it was not possible for an intoxicated person to consent to sexual activity if that person was too drunk to remember having sex).

We conclude, however, that the military judge fully cured trial counsel's error. First, the military judge sustained in a timely manner the defense's objection, albeit on a different ground than the one raised by the defense. Second, the mili-

tary judge ruled that trial counsel had misstated the law. Third, the military judge properly summarized the law by stating: "There's nothing that says you can't have sex with somebody who has taken alcohol or Triple C." The defense never expressed dissatisfaction with these curative measures or sought additional measures. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (explaining that the defense counsel "bore primary responsibility for ensuring that the error was cured in the manner most advantageous to his client"). We therefore conclude that in light of the military judge's curative measures, Appellant failed to establish that trial counsel's improper questioning was prejudicial.

## C. Findings and Rebuttal Arguments

"Counsel should limit their [findings] arguments to 'the evidence of record, as well as all reasonable inferences fairly derived from such evidence.'" *United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Therefore, when argument goes "beyond the facts established in the record" or the reasonable inferences "drawn from the evidence," this "constitute[s] error." *United States v. Paxton*, 64 M.J. 484, 488 (C.A.A.F. 2007).

"There is, however, an exception to this general rule. This court has held that it is proper for a trial counsel to comment during argument on 'contemporary history or matters of common knowledge within the community.'" *Fletcher*, 62 M.J. at 183 (quoting *United States v. Kropf*, 39 M.J. 107, 108 (C.M.A. 1994)). These matters include routine personnel actions, a military branch's drug policy, and "any other matter upon which [servicemembers] in general have a common fund of experience and knowledge, through data notoriously accepted by all." *Id.* (citation omitted) (internal quotation marks omitted).

When trial counsel invokes military policies, this Court has advised counsel "to tread lightly" because of the "danger of interjecting the command structure into the members' deliberations." *Kropf*, 39 M.J. at 109. "'A policy directive … must not be used as leverage to compel a certain result in the trial itself.'" *United States v. Pope*, 63 M.J. 68, 75

(C.A.A.F. 2006) (quoting *United States v. Fowle*, 7 C.M.A. 349, 351, 22 C.M.R. 139, 141 (1956)).

In the instant case, Appellant avers that the Government both argued facts not in evidence and interjected the command in the deliberation room when trial counsel made the following points during closing argument: "What do you keep learning when you're going through the SHARP program? People who are on drugs and alcohol are more vulnerable to be[ing] assaulted"; and VH was "vulnerable [because of her use of drugs and alcohol] as you all know again from your SHARP training, your common sense, and your life experience."

We need not decide whether it was error for trial counsel to make these arguments because Appellant has not demonstrated prejudice. Trial counsel's proposition—that people on drugs and alcohol are more vulnerable—is an unremarkable observation that is based on common knowledge. Thus, there is no reasonable probability that trial counsel's reference to the SHARP program in this context would have changed the outcome of Appellant's trial. Appellant therefore has not established material prejudice to a substantial right.

However, trial counsel did err by referencing the SHARP program in the context of myths about how a victim will or should react in the course or aftermath of a sexual assault. Simply stated, the "myths" reportedly taught about in SHARP training did not constitute trial evidence, and it was therefore erroneous for trial counsel to present argument about these myths in the context of SHARP training. *See Paxton*, 64 M.J. at 488. However, it is important to note that the Government elicited testimony from its expert witness on precisely the same point when it questioned her about rape myths. Therefore, the underlying point made by trial counsel *was* fully supported by evidence in the record. Accordingly, Appellant has not demonstrated that trial counsel's error resulted in material prejudice to a substantial right of the accused.

Finally, trial counsel concluded rebuttal argument by stating: "You have the evidence. You have the common sense. *You have the training.* Find him guilty of all charges and specifications." (Emphasis added.) This reference to

training, which was not based on evidence adduced at trial, was improper. However, this reference was fleeting and vague, and trial defense counsel did not object to it. Moreover, the military judge provided ameliorative instructions to the members that: an intoxicated individual can still consent to sexual activity; "argument by counsel is not evidence"; and "[a]n accused may be convicted based only on evidence before the court." Because of these factors, Appellant has failed to establish a reasonable probability that, absent the error, the results of the trial would have been different. *Robinson*, 77 M.J. at 299. Accordingly, trial counsel's passing reference to "training" does not constitute plain error.[5]

## V. Conclusion

Considered alone or cumulatively in the context of the entire record of trial,[6] we conclude that Appellant has failed to establish that trial counsel's misstatements of law and references to the SHARP program constituted plain error. Accordingly, we affirm the decision of the United States Army Court of Criminal Appeals as to findings and affirm only so much of the sentence as includes a bad-conduct discharge, confinement for five years, forfeiture of $1,546 pay per month for sixty months,[7] and a reduction to the lowest enlisted grade.

---

[5] As can be seen, we have determined that the facts and circumstances in this case do not support a plain error determination. However, we once again find it necessary to state the obvious: "Counsel should limit their arguments to the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Burton*, 67 M.J. at 152 (citation omitted) (internal quotation marks omitted).

[6] We have considered the cumulative impact of trial counsel's misconduct. Even when considered as a whole, we are confident that trial counsel's conduct did not affect the members' findings. *See Fletcher*, 62 M.J. at 184 ("[P]rosecutorial misconduct ... will require reversal when the trial counsel's [actions], taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.").

[7] The sentence to forfeiture must "state the exact amount in whole dollars to be forfeited each month." R.C.M. 1003(b)(2).